UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORINDA SMITH,<br>    Plaintiff,<br><br>    v.<br><br>CONNECTICUT PACKAGING<br>MATERIALS,<br>    Defendant. | No. 3:13-cv-00550 (JAM) |

**ORDER GRANTING SUMMARY JUDGMENT**

This case is about a plaintiff in her sixties who was very good at—and highly compensated for—her job as a sales representative for the defendant, a Connecticut packaging distribution company. When the company struggled financially in mid-2012, she lost her lucrative job. In this suit, she claims the company fired her because of her age and gender. Defendant now moves for summary judgment, arguing that it fired plaintiff because it simply could not afford to continue to employ her. For the reasons set forth below, I conclude that no genuine issue of discrimination remains and that defendant's motion for summary judgment should be granted.

**BACKGROUND**

Plaintiff Lorinda Smith worked for defendant Connecticut Packaging Materials (CPM) for over twenty years as a sales representative. By all accounts, she was outstanding at her job and had the highest earnings of any CPM employee, more than the other three sales representatives combined—around $500,000 a year. These earnings included sizable commissions. She was also a close mentee of CPM's founder and president, Larry Greenfield,

1

until Greenfield terminated her employment in late May 2012. At that time, she was 64 years old and older than the company's other three sales representatives, two of whom were middle-aged men (53 and 45 years old) and one of whom was a middle-aged woman (53 years old).[1] Greenfield himself was 73 years old.

The company had been undergoing serious financial difficulties, including a fiscal year-to-date loss of nearly $300,000. Greenfield had stopped taking any salary in 2010 amidst the company's financial challenges. Along with CPM's controller Vincent Welch and general manager James Cooke, Greenfield attended a meeting on May 30, 2012, with representatives of TD Bank, at which the bank refused to provide additional financing to CPM and noted that it might need to accelerate CPM's existing loans if the company did not reduce its costs significantly. The three CPM executives then made the decision to terminate plaintiff's expensive position.

The next day, Greenfield invited plaintiff to lunch—which the two ate together multiple times a week—and told her that he needed to terminate her employment as a result of the bank meeting and the company's financial difficulties. Plaintiff states that Greenfield used the phrase "early retirement" during their conversation (Doc. #37, ¶ 39; Doc. #40, ¶ 39). Greenfield did not hire another sales representative in plaintiff's place. Instead, Greenfield took on her job responsibilities himself. It is undisputed that plaintiff's discharge and replacement by Greenfield—who was not taking any salary—reduced CPM's costs by over $400,000 a year.

---

[1] That plaintiff was one of four CPM sales representatives at the time of her termination in May 2012 is stated in her amended complaint (Doc. #23, ¶ 16), in defendant's Local Rule 56(a)1 statement of material facts (Doc. #37, ¶ 7), in plaintiff's response to defendants Local Rule 56(a)1 statement (Doc. #40, ¶ 7), and in defendant's verified interrogatory response (Doc. #37-1 at 71), and is referenced consistently in all of the briefing on the motion for summary judgment. At oral argument, plaintiff's counsel stated that there were in fact *three* male and one female sales representatives in addition to plaintiff. He pointed to a chart provided in an email to him and included as an exhibit to plaintiff's opposition to summary judgment. *See* Doc. #42-18 at 21. That chart, however, lists the additional sales representative as receiving payment only through January 2012 and therefore not employed by CPM at the time of plaintiff's termination four months later.

There is no evidence of any prior adverse comments by any of the company's management about plaintiff on the basis of her age or gender for the more than 20 years that she worked at the company.

Plaintiff believes that her termination was an act of discrimination. She sues for age discrimination under the Age Discrimination in Employment Act (ADEA) and the Connecticut Fair Employment Practices Act (CFEPA), and for gender discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) and CFEPA. She also sues under a Connecticut wage statute—Conn. Gen. Stat. § 31-71a *et seq.*—for allegedly improper deduction or withholding of wages. Defendant has now moved for summary judgment on all claims.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

Plaintiff's age and gender discrimination claims operate under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Raspardo v. Carlone*, 770 F.3d 97, 125 (2d Cir. 2014) (*McDonnell Douglas* burden-shifting applies to Title VII gender claims); *Delaney v. Bank of Am. Corp*, 766 F.3d 163, 167–68 (2d Cir. 2014) (*McDonnell Douglas* burden-shifting applies to claims brought under ADEA).[2] First, plaintiff must set out a *prima facie* discrimination case. *McDonnell Douglas*, 411 U.S. at 802. If she succeeds, defendant can counter the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for taking an adverse employment action against her. *Ibid.* Finally, plaintiff can still succeed in her claim if she can show that the proffered reason was a "pretext" for discrimination, *id.* at 804, a showing which requires plaintiff to demonstrate both that her employer's stated reason was untrue or incomplete, and that discrimination played a causal role in her discharge.[3] *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998) ("An employer's reason for termination cannot be proved to be a pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

A *prima facie* showing requires plaintiff to show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and

---

[2] Plaintiff's state law claims under CFEPA are also subject to the *McDonnell Douglas* burden-shifting analysis. *See Rubinow v. Boehringer Ingelheim Pharm., Inc.*, 496 F. App'x 117, 118 (2d Cir. 2012) ("Summary judgment motions in age discrimination cases under the ADEA and CFEPA are decided using the *McDonnell Douglas* burden-shifting test."); *Kaytor v. Elec. Boat Corp*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination . . . claims under CFEPA is the same as under Title VII.").

[3] The causation standards for plaintiff's age and gender discrimination claims differ and are discussed *infra*, at note 6.

(4) that action occurred under circumstances giving rise to an inference of invidious discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251–52 (2d Cir. 2014). The first three requirements are clearly met here and are not disputed: plaintiff is a member of both age- and gender-based protected classes (ADEA and CFEPA protect employees over the age of 40,[4] and Title VII and CFEPA protect women); she was exceedingly good at her job; and she was terminated. I therefore discuss whether the facts, taken in the light most favorable to plaintiff, would allow a reasonable jury to find that there were circumstances giving rise to an inference of invidious discrimination.

Because plaintiff has alleged that she was discriminated against on the basis of her age and gender taken together, I analyze her claims not only as separate age and gender discrimination claims, but also as including an "age-plus-gender" claim. As the Second Circuit has recognized, "a plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that certain members of a protected class are not subject to discrimination, while another subset is discriminated against based on a protected characteristic shared by both subsets," because "where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109–10 (2d Cir. 2010); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118–19 (2d Cir. 2004).

Plaintiff makes clear that, prior to her termination, she never heard any decisionmaker at CPM display any kind of bias against women, the elderly, or elderly women.[5] Of the four sales

---

[4] CFEPA, unlike ADEA, does not actually impose the age of 40 as a "floor" for protection. But because the Connecticut Supreme Court looks to federal precedent when interpreting and enforcing CFEPA, this Court has held that "the [Connecticut] Supreme Court would use the same age floor used in ADEA—age 40." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 279 n.3 (D. Conn. 2009) (quoting *Rogers v. First Union Nat. Bank*, 259 F. Supp.2d 200, 209 (D. Conn. 2003)).

[5] Plaintiff points to a single comment made by another sales representative, Doc. #41 at 13, in which he

5

representatives at CPM in May 2012, two were women and two were men, and though plaintiff was the oldest she was also by far the highest paid. After her termination, plaintiff was not replaced by a younger or male sales representative; Greenfield took on her duties himself while continuing to draw no salary for any of his CPM work. While "plaintiff is not required to establish that she was replaced by a single male and/or younger employee in order to carry her burden" at the *prima facie* stage, she is still required to show that her discharge occurred in circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 503 (2d Cir. 2009), *superseded in unrelated part by regulation, as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108–09 (2d Cir. 2013). In *Leibowitz*, the Second Circuit found that a plaintiff had met the fourth *prima facie* prong by showing that she and the five other employees who were laid off were women at least 50 years old, that her duties were primarily reassigned to men, and that she was not considered for any vacant positions. The present case is distinguishable: plaintiff was the only employee who was terminated, and while her duties were taken over by a man, that man was not another sales representative but rather the considerably older company president who took no salary.

Plaintiff raises two circumstances to support her discrimination claim: (1) only men participated in the decision to terminate plaintiff's employment, and (2) she was the only older woman doing sales representative work and was undisputedly more productive than the other sales representatives. But the men who decided whether to terminate plaintiff's employment were entirely the appropriate decisionmakers—CPM's president, vice president, and controller. *See Davis v. Peake*, 505 F. App'x 67, 68 (2d Cir. 2012) (in Title VII race discrimination claim

---

allegedly mentioned that "[m]y wife and family come first." Doc. #42-4 (Pl.'s Dep.) at 9. Whether or not this comment reflects age- or gender-based bias on the part of the sales representative, there is no indication that he was in any way involved in plaintiff's termination.

that plaintiff was unlawfully passed over for a job, "[t]he racial makeup of the interviewing panel . . . do[es] not suffice to raise an inference of invidious discrimination").

Plaintiff contends that she was terminated because she is an older woman, and that therefore it is of no matter that a younger, female sales representative kept her job, or that the older, male Greenfield took on plaintiff's duties after she was terminated. Younger men (two of the sales representatives), a younger woman (the third sales representative), and an older man (Greenfield) all remained at CPM, while the older, female plaintiff was terminated. But without more, the singular termination of plaintiff does not give rise to an inference of invidious discrimination simply because she happened to be the only older woman of the small handful of CPM employees doing sales representative work. And plaintiff was earning much more than any of the other sales representatives who were not terminated, making them inappropriate comparators to show that similarly situated employees outside of plaintiff's protected class were treated more favorably. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal quotation marks and citation omitted); *Raspardo*, 770 F.3d at 127–28 (finding that a plaintiff had failed to identify a sufficiently similar comparator to support her sex discrimination claim).

Finally, plaintiff points to Greenfield's "early retirement" comment at the time of her termination. According to plaintiff, "Mr. Greenfield told me that he would like for me to take early retirement, because the meeting with the bank the night before did not go well, and the bank was not going to loan the company any more money." Doc. #37, ¶ 39; Doc. #40, ¶ 39. In

deciding what weight to accord isolated remarks that may be suggestive of discriminatory bias, the Court must consider:

> (1) who made the remark (i.e. a decision-maker, a supervisor, or a low-level co-worker);
> (2) when the remark was made in relation to the employment decision at issue;
> (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and
> (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Wyeth Pharm.*, 616 F.3d at 149 (spacing altered).

The "retirement" remark was made by the president of CPM while notifying plaintiff of his decision to terminate her—factors in favor of plaintiff's claim. But given both that the comment made explicit the financial issues underlying the termination decision and that Greenfield himself was nearly ten years her senior, no reasonable jury could find that the circumstances around the remark reveal discriminatory attitudes toward plaintiff on account of her age. "'The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.'" *Rivera v. Thurston Foods, Inc*, 933 F. Supp. 2d 330, 339 (D. Conn. 2013) (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007)). In short, I conclude that no reasonable jury could find that plaintiff's termination occurred under circumstances giving rise to an inference of invidious discrimination, and therefore that plaintiff cannot meet her *prima facie* burden.

Even assuming *arguendo* that plaintiff could make out a *prima facie* discrimination claim, she has not provided enough evidence to raise a triable issue that CPM's legitimate, nondiscriminatory reason—the need to quickly cut costs by terminating the highest-paid employee in the company—was an untrue or incomplete explanation, and that in fact plaintiff

was fired as a result of age and/or gender discrimination.[6] *Wyeth Pharm.*, 616 F.3d at 157. Plaintiff notes that other employees were given raises after her termination,[7] and that the company maintained a salaried position for Greenfield's wife and expensive cars for CPM management. She suggests that CPM could and should have reduced its costs in other ways than by terminating her employment. Defendant, meanwhile, points to the company's considerations of other cost-cutting options, including refinancing the company's mortgage, having the controller and general manager quit, terminating other employees, and cutting the commission rate of the sales staff.

My inquiry here is not whether CPM made the correct business decisions; it is whether CPM made a discriminatory decision, as might be apparent if there were no plausible basis for the alleged "business" decision that CPM made. But the company's financial situation in 2012 is well-documented and undisputed. TD Bank had refused to extend CPM's credit and told CPM that it needed to reduce its costs substantially. As of May 2012, CPM's fiscal year-to-date loss was nearly $300,000. Plaintiff's yearly earnings were approximately $500,000, higher than anyone else at CPM and higher than the other three sales representatives combined. CPM's vice president and controller volunteered for termination to save the company their salaries, but their

---

[6] The causation standard differs for plaintiff's age and gender claims. To establish her gender discrimination claims, plaintiff must show that gender was a "motivating factor" in the decision to terminate her, even if other factors also motivated the decision. 42 U.S.C. § 2000e–2(m); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013). To prevail under ADEA, plaintiff must show that her age was a "but-for" cause of her termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *Gorzynski*, 596 F.3d at 106. CFEPA's causation standard for age discrimination has not been definitely established by the Connecticut Supreme Court or Appellate Court, but this Court and the Second Circuit have applied the *Gross* "but-for" standard to such claims. *Rubinow*, 496 F. App'x at 118–19; *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 21–22 n.1 (2d Cir. 2011); *Fasoli v. City of Stamford*, -- F. Supp. 3d --, 2014 WL 6808679, at *22 & n.34 (D. Conn. 2014). *But see Gonska v. Highland View Manor, Inc.*, 2014 WL 3893100, at *8 (Conn. Super. Ct. 2014) (citing Connecticut Superior Court cases which have chosen not to apply the "but-for" standard to CFEPA age discrimination claims). Under either the "motivating factor" or "but-for" causation standard, plaintiff has not provided evidence from which a reasonable jury could conclude that her age or gender led to her termination.

[7] It is worth noting that the raises referenced by plaintiff were provided in the summer and fall of 2013, well over a year after plaintiff's termination, and that these raises were not nearly the amount of plaintiff's salary. Doc. #42-16 (Welch Dep.) at 12–13; Doc. #42-17 (Cooke Dep.) at 8–9.

combined salaries were still only half of plaintiff's. Though plaintiff undeniably earned her hefty commission with her sales prowess, Greenfield did not "def[y] logic" when he nonetheless terminated her, Doc. #41 at 13, and in fact during his assumption of her duties CPM saved over $400,000 a year. Plaintiff has not provided any evidence from which a reasonable jury could find in her favor, in the face of defendant's "overwhelming documentary evidence supporting [CPM]'s articulated nondiscriminatory reason." *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012).

Therefore, I grant defendant's motion for summary judgment with regard to plaintiff's discrimination claims. I otherwise decline to exercise supplemental jurisdiction over plaintiff's remaining state law claim regarding the calculation of her commission, a claim which is not closely related to the discrimination claims at issue in the case. *See* 28 U.S.C. § 1367(c); *see also Delaney*, 766 F.3d at 170 ("'In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.'") (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

## CONCLUSION

For the foregoing reasons, defendant CPM's motion for summary judgment (Doc. #35) is GRANTED. The amended complaint is dismissed with prejudice, and judgment shall enter in favor of defendant on all claims.

The Clerk shall close this case.

It is so ordered.

Dated at Bridgeport this 16th day of January 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge